NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 22, 2013[*]
Decided May 22, 2013

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2857

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 04 CR 307-1 |
| LAMAR C. CHAPMAN III, *Defendant-Appellant.* | James B. Zagel, *Judge.* |

**O R D E R**

Lamar Chapman appeals from an order terminating his supervised release "unsatisfactorily." We dismiss the appeal.

In 2004 Chapman was sentenced to six months' imprisonment and three years' supervised release for passing a forged security. *See* 18 U.S.C. § 513(a). He was ordered to

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

pay $77,860 in restitution to his victims. Chapman, who had been out on bond, failed to surrender; he was arrested on a bench warrant four months later. After completing his federal prison sentence and commencing the term of supervised release, he was convicted in state court of possessing a stolen car. His supervision was tolled while he served his state sentence, *see* 18 U.S.C. § 3624(e), and resumed in April 2007.

Then in mid-2008 a probation officer alerted the district judge that Chapman had violated the conditions of his supervised release by failing to pay restitution. The judge modified those conditions by ordering Chapman to find a job and pay 10% of his income toward his restitution obligation. Over the next year, the court conducted multiple status hearings to assess Chapman's progress. The court repeatedly expressed concern that Chapman was applying for jobs for which he was unqualified and, as a felon, also unlikely to obtain. With the exception of funds applied from a seized savings account, Chapman did not make a single restitution payment until July 2009, nearly 35 months into his 36-month term of supervised release. His supervision was scheduled to end in August 2009, but the district court extended it for another three months two days before the termination date. Chapman did not appeal that decision.

Two weeks after that extension, Chapman was arrested again for passing forged securities, 18 U.S.C. § 513(a), and placed on home confinement with electronic monitoring. The district judge ordered Chapman to continue making restitution payments at the end of the three-month extension but took no further action on Chapman's supervised release. Chapman was eventually convicted in 2011 on the second § 513(a) charge and sentenced to 60 months in prison. *United States v. Chapman*, 692 F.3d 822, 825 (7th Cir. 2012). In July 2012, after receiving a report from the probation officer, the district court conducted a status hearing on Chapman's supervised release for his 2004 conviction. At that hearing the court announced that Chapman's supervised release was being terminated "unsatisfactorily" because of the new conviction (for conduct that had occurred while he was under supervision) and also because Chapman had not made "an honest effort to pay restitution." Meanwhile, Chapman was facing more federal charges, and recently he was convicted of wire fraud, 18 U.S.C. § 1343, and sentenced to another 65 months in prison. *United States v. Chapman*, No. 10 cr 642-4 (N.D. Ill. Feb. 22, 2013).

Chapman filed a notice of appeal from the order terminating his supervised release. In his brief he principally contends that his term of supervision was extended beyond the statutory maximum of three years. *See* 18 U.S.C. § 3583(b)(2). But the district judge extended Chapman's supervision in August 2009, and his notice of appeal is untimely as to that decision. *See* FED. R. APP. P. 4(b)(1)(A); *United States v. Lilly*, 206 F.3d 756, 763 (7th Cir. 2000). In any event, a claim about the extension would be moot because Chapman no longer is on supervised release for his 2004 conviction. *Cf. United States v. Garcia-Garcia*, 633 F.3d 608, 612

(7th Cir. 2011) (concluding that release from prison had not mooted direct appeal from conviction since defendant was serving term of supervised release); *United States v. Larson*, 417 F.3d 741, 747 (7th Cir. 2005) (same).

Chapman also takes issue with the district court's statement that his supervised release was being terminated "unsatisfactorily." But Chapman received the relief he wanted—the end of his supervised release—and parties cannot appeal decisions entirely in their favor. *See Luna v. United States*, 454 F.3d 631, 635 (7th Cir. 2006); *Byron v. Clay*, 867 F.2d 1049, 1050 (7th Cir. 1989). Indeed, we have not found an appellate case reviewing the *termination* of supervised release.

For there to be a case or controversy, Chapman must have suffered an injury from the manner in which his supervised release ended. *See Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998); *Eichwedel v. Curry*, 700 F.3d 275, 279 (7th Cir. 2012). He does not assert that the "unsatisfactory" label carries legal significance, and we are aware of none. That label appears nowhere in the statute, nowhere in the sentencing guidelines, in no circuit opinion, and in only one decision from a district court, *see United States v. Mayomi*, No. 93 CR 210–1, 1998 WL 575129, at *1 (N.D. Ill. Aug. 26, 1998) ("[T]his Court orders that Mayomi's term of supervised release imposed in this case be terminated unsatisfactorily, effective immediately."). And even though the "unsatisfactory" termination was noted on the presentence reports for Chapman's later crimes, it did not garner any criminal history points. *Cf. United States v. Laguna*, 693 F.3d 727, 729 (7th Cir. 2012) (discussing possible collateral consequences, including "criminal history upgrade," that might create injury). Chapman calls the court's statement "judicial defamation," but he does not explain how the characterization hurt him beyond damaging his reputation, and there is no constitutionally protected interest in reputation alone. *See Paul v. Davis*, 424 U.S. 693, 711–12 (1976); *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013); *Hojnacki v. Klein–Acosta*, 285 F.3d 544, 548 (7th Cir. 2002). The facts underlying the label—namely his 2011 conviction and his failure to pay restitution—cannot be undone because "[t]he judicial arsenal does not include a writ of erasure that blots documents from existence." *Tara Gold Resource Corp. v. SEC*, 678 F.3d 557, 559–60 (7th Cir. 2012). What future employers or other individuals make of these facts is a matter for their own discretion. *See id.* at 560.

DISMISSED.